UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DL, et al.,

     Plaintiffs,

v.                                  Case No.:  8:22-cv-35-JLB-AEP

HERNANDO COUNTY SHERIFF'S
OFFICE, et al.,

     Defendants.

_____/

## PLAINTIFFS' RESPONSE OPPOSING DEFENDANT'S (*HERNANDO COUNTY SCHOOL BOARD*) MOTION TO DISMISS THE COMPLAINT

Plaintiffs, by and through their undersigned counsel, file this their Response in Opposition to Defendant's (Hernando County School Board) Motion to Dismiss the Complaint and say:

### I.  STANDARD OF REVIEW

In reviewing a motion to dismiss, all factual allegations in a complaint must be accepted as true and taken in the light most favorable to the plaintiff. *Jackson v. Okaloosa County*, 21 F. 3d 1531, 1534 (11th Cir. 1994).  A Rule 12(b)(6) motion tests the sufficiency of a complaint under the federal pleading rules.  A claim fails this inspection if it asserts a legal theory that is not cognizable as a matter of law, or because its factual account is implausible. See *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 555 & 570, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007). When deciding a Rule 12(b)(6) motion, the court presumes all well-pled factual allegations to be true, resolves all reasonable doubts and inferences in the plaintiff's favor, and views the complaint in the light most favorable to the non-moving party. *Id.* at 555.

The federal pleading requirements are far from trivial. Although "detailed factual -allegations" are not required, the rules "demand … more than an unadorned, the-defendant-unlawfully-harmed-me accusations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed. 2d 868 (2009) (citing *Twombly*). A plaintiff must allege enough facts to raise his claims beyond the level of speculation, "nudging the[m] claims across the line from conceivable to plausible." *Twombly* at 570. A plaintiff must do more than offer labels, conclusions, and "a formulaic recitation of the elements of a cause of action." *Iqbal* at 678. The court will not accept as true bold assertions, conclusions, or legal conclusions "couched" as facts. *Id* at 678-79; *Twombly* at 555.

For claims to survive a Rule 12(b)(6) motion, therefor, the plaintiff's allegations "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbau* at 678 (quoting *Twombly* at 555). A claim is facially plausible where the facts alleged permit the court to reasonably infer that defendant's alleged misconduct was unlawful. *Id.*

## II.   ARGUMENT

### A. Exhaustion of Administrative Remedies.

The Defendant argues that Plaintiff's claims for violation of ADA are attempts at circumventing the IDEA administrative exhaustion requirements.  The Defendant's argument is without merit.

The IDEA, 20 U.S.C. §1400 et seq. is an Act that "ensures that children with disabilities receive needed special education services."  *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 748, 197 L. Ed. 2d 46 (2017).  "The IDEA offers federal funds to States in exchange for a commitment: to furnish a 'free appropriate public education' – more concisely known as a FAPE – to all children with certain physical and intellectual disabilities."  *Fry*, 137 S. Ct. at 748.  "Under the IDEA an 'individualized education program,' called an IEP for short, serves as the 'primary vehicle' for providing each child with the promised FAPE".  *Fry* at 749.  "Because parents and school representatives sometimes cannot agree on such issues, the IDEA establishes formal procedures for resolving disputes".  *Fry* at 749.  Included within that dispute mechanism are procedural safeguards which permit parental involvement, including administrative review through a due process hearing.   10 U.S.C. § 1415; *N.B. by D.G. v Alachua County Sch. Bd.*, 84 F. 3d 1376, 1378 (11th Cir. 1996).  Plaintiffs are required to utilize the administrative review process established pursuant to §1415(f) of IDEA. *N.B. by D.G.* at 1378.

"Important as the IDEA is for children with disabilities, it is not the only federal statute protecting their interest." *Fry* at 749. "Of particular relevance … are two antidiscrimination laws – Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq., and § 504 of the Rehabilitation Act, 29 U.S.C. § 794 – which cover both adults and children with disabilities, in both public schools and other settings." *Fry* at 749. Relevant to Plaintiff's claim, "(t)itle II forbids any 'public entity' from discriminating based on disability. *Id.* Both the ADA and the Rehabilitation Act permit an aggrieved party "to seek redress for violations of their substantive guarantees by bringing suits for injunction relief or money damages." *Fry* at 750 (citing to 29 U.S.C. §794a(a)(2); 42 U.S.C. §12133).

"(A) plaintiff bringing suit under the ADA … must in certain circumstances – that is, when 'seeking relief that is also available under' the IDEA – first exhaust the IDEA's administrative procedures." *Fry* at 750. The Supreme Court in *Fry* held that the Section 1415(f) requirement to exhaust the IDEA's procedures (administrative remedies) before filing an action under the ADA applies "when (but only when) the suit 'seek(s) relief that is also available' under the IDEA." *Id.* at 752. To emphasize when the exhaustion of administrative remedies is required and when it is not required, the Supreme Court held "that to meet that statutory standard, a suit must seek relief for the denial of a FAPE, because that is the only 'relief' the IDEA makes 'available.'" *Fry* at 752. Thus, the "exhaustion rule

hinges on whether a lawsuit seeks relief for the denial of a (FAPE)." *Id.* at 754. If it does, exhaustion is required. If a complaint seeks redress for "other harms, independent of any FAPE denial, [it] is not subject to § 1415(f)'s exhaustion rule because, once again, the only 'relief' the IDEA makes 'available' is relief for the denial of a FAPE." *Id.* at 754-55.

The Supreme Court, in *Fry*, provided some guidance for determining whether a plaintiff actually seeks relief for the denial of a FAPE under the IDEA: "What matters is the crux – or, in legal-speak, the gravamen – of the plaintiff's complaint, setting aside any attempts at artful pleading." *Fry* at 755. The inquiry turns on the relief a plaintiff actually "seeks," as the statute requires, but not relief that a plaintiff "could have sought." *Id.* On the other hand, the inquiry does not turn on whether a complaint includes (or omits) any magic phrase, such as FAPE or IEP. *Id.* In addition, "a court should attend to the diverse means and ends of the statutes covering persons with disabilities," principally noting that the IDEA's goal is to "provide each child with meaningful access to education by offering individualized instruction and related services appropriate to her 'unique needs'… while Title II…promise(s) non-discriminatory access to public institutions." *Id.* at 755-56.

In *Fry*, the Court also offered several "clues" to help determine the gravamen of a complaint. The Court suggested that lower courts ask two

hypothetical questions: "First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public faculty that was not a school – say, a public theater or library?  And second, could an adult at the school – say, an employee or visitor - have pressed essentially the same grievance?" *Id*. at 456. When the answer to both questions is yes, the complaint does not likely allege the denial of a FAPE; when the answer is no, then it likely does. *Id*.  In addition, a court should look to the "history of the proceedings." *Id*. at 757.  "A plaintiff's initial choice to pursue that process may suggest that she is indeed seeking relief for the denial of a FAPE – with the shift to judicial proceedings prior to full exhaustion reflecting only strategic calculations about how to maximize the prospect of such a remedy." *Id*.

The "crux" of the Plaintiff's Complaint is that it seeks relief for the disability-based discrimination the ten-year old faced at school and not the denial of a FAPE under the IDEA.  The Plaintiff seeks redress for "other harms, independent of any FAPE denial" which the *Fry* Court has held that plaintiffs are entitled to pursue under ADA without exhausting administrative remedies under IDEA.  The Complaint alleges specific harms that the child suffered as a result of ADA violations.  Those harms consist of physical pain, emotional pain, psychological injury, trauma, and suffering from fear, distrust and anxiety - all resulting from disability discrimination by school personnel, school resource

officers and law enforcement officers arising out of improper and unnecessary seclusion, excessive physical force and physical restraints, including handcuffs. These are harms totally independent of any FAPE denial.

Fry's suggested "clues" also support the conclusion that the Plaintiff's claims do not seek relief for the denial of a FAPE. First, could essentially the same claim be brought if the alleged conduct had occurred at a public facility that was not a school? Absolutely, the alleged conduct (disability discrimination) – placing a child with severe cognitive impairment into isolation and seclusion coupled with the use of excessive force and prolonged restraints (handcuffs) – would be actionable if such had occurred at any public facility that was not a school. If the alleged conduct had occurred at a public pool, a public library, a public park, a public theater or a community center, the child would have a claim for disability discrimination under the ADA. Utilizing isolation, seclusion, excessive force, and excessive restraints through use of handcuffs against a child with disabilities to force compliance to the demands of those in authority is not a unique form of disability discrimination limited to a school setting. The harm to the child does not result from a denial of access to a "free appropriate public education"; the harm results from the physical, emotional, traumatic injuries suffered by the child that an IEP cannot remedy. And second, could an adult at the school – say an employee - have pressed essentially the same grievance? The answer to the second "clue" is

7

also yes. An adult employee at a school who suffers from autism, for example, would have a right to press an ADA discrimination claim in the event the employee was isolated or secluded as a consequence of his disability. The locking of an employee with a disability into a solitary room to perform his work would give rise to an ADA claim. Furthermore, by analogy, restraining a disabled adult employee by chaining him to a chair would give rise to an ADA claim. With the answer to both of the hypothetical questions being yes, the *Fry* "test" would support the conclusion that the claim does not allege the denial of a FAPE so as to give rise to the requirement that the administrative remedies of IDEA be exhausted. In addition, a court should look to the "history of the proceedings." *Fry* at 757. A plaintiff's initial choice to pursue that process may suggest that she is indeed seeking relief for the denial of a FAPE. Here, Plaintiff's initial choice to pursue a remedy is the filing of this action. Neither the Complaint nor the Defendant's motion to dismiss indicates that Plaintiff's initial choice to pursue a remedy was the seeking of the denial of a FAPE.

## B. Complaint States a Cause of Action

To state a claim under Title II of the ADA, a plaintiff must demonstrate "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities or was otherwise discriminated against by the public entity; and (3)

that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." 42 U.S.C. § 12132; *J.S. v. Hous. Cnty. Bd. of Educ.*, 877 F. ed 979 (11th Cir. 2017) (citing Bircoll *v. Miami-Dade Cty.*, 480 F. 3d 1072, 1083 (11th Cir. 2007); Also see *Shotz v. Cates*, 256 F. 3d 1077, 1079 (11th Cir. 2001). Furthermore, regulations issued pursuant to the ADA state that "no qualified individual" with a disability shall … be subjected to discrimination by any public entity. *Shotz* citing to 28 C.F.R. §35.149.

The Complaint states a cause of action for discrimination against a ten-year-old boy with a disability by reason of his disability.  The Defendant's motion to dismiss mischaracterizes the conduct that the Plaintiff alleges constitutes disability discrimination.  The Defendant argues that it was the student's *removal from the classroom* that is alleged by Plaintiff as the basis for the discrimination.  Such is not the case.  Instead, the Complaint alleges that it was the student's isolation and seclusion, following his removal from the classroom, that formed the basis of the discrimination.  Not only is seclusion discriminatory; it is also a violation of §1003.573(2), *Fla. Stat.*, that prohibits the use of seclusion against students with disabilities.  "[U]njustified institutional isolation of persons with disabilities is a form of discrimination based on disability under Title II."  *J.S. v. Hous. Cnty. Bd. of Educ.*, supra (citing *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 119 S.Ct. 2176, 144 L. Ed. 2d 540 (1999).  In fact, in *J.S. v. Hous. Cnty. Bd. of Educ.*, the

9

Eleventh Circuit determined that it was error for the Circuit Court to have entered summary judgment denying a Title II ADA claim in a case involving a third-grade student with disabilities being removed from the classroom.   In reaching its conclusion, the Court made note of *K. M. ex rel D. G. v. Hyde Park Cent. Sch. Dist.,* 381 F. Supp. 2d 343, 360 (S.D.N.Y. 2005) (recognizing that "unnecessary social isolation has been considered a form of actionable discrimination" and concluding that, in light of *Olmstead*, a disabled student's isolation during lunch appears to be such a claim).

The Defendant's motion to dismiss fails to recognize the gravity of the conduct alleged to be discriminatory, especially as such relates to the allegations in the Complaint that the student was subjected to physical abuse through the use of excessive force and by the use of impermissible handcuffs for a prolonged period of time that inflicted pain in order to induce compliance.  Defendant's citation to *T. W. ex rel. Wilson v. Sch. Bd. of Seminole County, Fla.,* 610 F. 3d 588, 604-705 (11th Cir. 2010) is misplaced.  In the first instance, the case before the Eleventh Circuit was an appeal from a summary judgment wherein the Court had the opportunity to consider evidence developed during the course of the litigation.  The case at bar has not proceeded beyond the pleading stage and the parties have not yet had the opportunity to conduct discovery to establish evidence that might be considered at a summary judgment hearing.  Defendant's failure to distinguish the

procedural posture of the case at bar is seen in its argument stating that "Plaintiffs have *provided no evidence* … that Plaintiff was discriminated against…"

Next, *T. W. ex rel. Wilson* involved an action brought under the Fourteenth Amendment's Due Process Clause for excessive corporal punishment.   The Court engaged in a detailed analysis of Fourteenth Amendment due process claims based on the use of excessive force on students.   Since the Complaint now before the Court does not involve a Fourteenth Amendment claim, the analysis of the Court in that case as to the Fourteenth Amendment claim is not germane to the case at bar. Even assuming the case now before the Court were a Fourteenth Amendment claim, the distinguishing facts in this case would support a cause of action for a Fourteenth Amendment claim.   In fact, the Eleventh Circuit stated: "[n]evertheless, excessive corporal punishment, at least where not administered in conformity with a valid school policy authorizing corporal punishment . . . may be actionable under the Due Process Clause when it is tantamount to arbitrary, egregious, and conscience-shocking behavior." Citing to *Neal ex rel. Neal v. Fulton County Bd of Educ.*, 229 F. 3d 1069, 1074 (11th Cir. 2000); see also *Lewis*, 523 U.S. at 848, 118 S.Ct. at 1718.

In sharp contrast to the facts in *T. W. ex rel. Wilson,* our Plaintiff was a 4'10" tall, ninety-pound, ten-year-old boy with severe non-communitive autism

who – contrary to Florida law[1] and not in conformity with any valid school policy - was placed in handcuffs for a prolonged period of time causing physical and psychological injuries.   Even assuming arguendo that the Plaintiff had pled a Fourteenth Amendment case, the conduct that harmed the Plaintiff would shock the conscience.

The *T. W. ex rel. Wilson* case was not an ADA case; however, it also involved a claim under Section 504 of the Rehabilitation Act that prohibits discrimination against an individual with a disability. 29 U.S.C. §794(a). Though it must be noted that courts generally rely on cases construing the Rehabilitation Act and the ADA interchangeably because the same standards govern discrimination claims. *T. W. ex rel. Wilson* citing to *Allmond v. Akal Sec., Inc.* 558 F. 3d 1312, 1216 n. 3 (11th Cir. 2009).  The Court's decision as to the Section 504 claim was based on the facts unique to that case as set forth in the record at a summary judgment hearing; and as such is not applicable to a ruling on a motion to dismiss for failure to state a cause of action.

## C. Punitive Damages

The Plaintiff agrees that *Barnes v. Gorman*, 536 U.S. 181, 189-190 (2002) applies; and thus, punitive damages are not available in this ADA action against the HCSD.

---

[1] §1003.573, F. S., prohibits the use of handcuffs on students with disabilities so as to inflict pain to induce compliance.  Note the *T. W. ex rel Wilson* case, dated June 29, 2010, was decided before the effective date of said §1003.573, which became effective on July 1, 2010.  See s. 4, ch. 2010-224.

## D. Permanent Injunctive Relief

In the context of the ADA and Rehabilitation Act, courts have consistently held that "discrimination on the basis of disability is the type of harm that warrants injunctive relief." *Doe v. Judicial Nominating Commission for the Fifteenth Judicial Circuit of Florida,* 906 F. Supp. 1534, 1545 (S.D. Fla. 1995); *Spiegel v. City of Houston, 636 F.2d 997 (5th Cir. 1981).*

Plaintiff has neither pled nor sought a *preliminary injunction* in his Complaint. Yet, the Defendant argues that Plaintiff is not entitled to an injunction by citing to inapplicable case law that exclusively addresses a *preliminary injunction.*

As to a permanent injunction, the Defendant objects to Plaintiff's request for such by arguing that the Plaintiff has failed to plead the standard for granting an injunction. Such an argument does not address the sufficiency of the complaint which would be the subject of a motion to dismiss. Instead, such an argument is that which might be made at such time as Plaintiff should seek a preliminary or permanent injunction, if at all. The Defendant's motion is in the nature of an answer in that it asks for a *denial of relief* as opposed to a motion for dismissal of a complaint based upon a pleading deficiency.

## E. Shotgun Pleadings

The Eleventh Circuit's recent opinion in *Barmapov v. Amuial,* 986 F.3d 1321

(11th Cir. 2021) provides a clear guide as to what constitutes a shotgun pleading. ("shotgun pleading is a complaint that violates either Federal Rule of Civil Procedure 8(a)(2) or Rule 10(b), or both."). Rule 8(a)(2) and Rule 10(b) require the complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief" and to "state its claims … in numbered paragraphs, each limited as far as practicable to a single set of circumstances." *Id at 1324.*

The Eleventh Circuit identifies four types of shotgun pleadings: (1) a complaint with multiple counts that incorporate the allegations of every preceding one; (2) a complaint with conclusory, vague, or immaterial facts not connected to a specific claim; (3) a complaint that does not separate each claim into a different count; and, (4) a complaint with multiple claims against multiple defendants without specifying which defendant is responsible for an act or omission, or which defendant a claim is against. *Id at 1324-25.*

The Plaintiff's Complaint does not fall into the first or third category. Relevant to the Hernando County School District, there are two separate and distinct counts: (a) Count IV that is a claim under 42 U.S.C. §12132 (the "ADA"); 28 C.F.R. §35.130(b)(3),(8)[2]; and (b) Count V that is a claim under 42 U.S.C. §12132 (the "ADA") 28 C.F.R. 35.130 (b)(7)[3].

---

[2] **(3)** A public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration:

The claim under Count IV is a claim that the Plaintiff has suffered disability discrimination at the hands of the Defendant by virtue of the Defendant subjecting the Plaintiff to unnecessary and improper seclusion and by subjecting the Plaintiff to excessive physical force and improper physical restraints, including handcuffs. On the other hand, Count V is a claim that the Defendant failed to implement reasonable modifications as to its policies, practices, procedures, and training as to how children with disabilities are accommodated when the use of isolation, seclusion, physical force, and restraints are used on such disabled children.   Not only are these two counts separate from each other, they are also separate and distinct from count I and II which address the Hernando County Sheriff and the School Resource Officer.

As to the second category, the Complaint does not contain conclusory, vague or immaterial facts not related to the claims.  The Complaint sets forth detailed facts to establish that the Plaintiff is a disabled child.  The Complaint also sets forth detailed facts as to the conduct that was discriminatory – the improper use of

---

(i) That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability;

[3] (7)

(i) A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

15

isolation and seclusion and the improper use of physical force and restraints (including the use of handcuffs). The Complaint also details that it is the Defendant's policies, practices, procedures, and trainings related to the use of isolation and seclusion and the improper use of physical force and restraints (including the use of handcuffs) that needed to be modified under the ADA – not to provide the Plaintiff with access to education but to provide him with a safe physical environment.

The fourth category of shotgun pleading identified in *Barmapov* is not present here either. As stated in *Barmapov*, "even though several of the counts target multiple defendants, these counts 'specify[] which of the defendants are responsible for which acts or omissions." *Barmapov* at 1325. While count one and count two target the Sheriff and the School Resource Officer, counts four and five target the Hernando County School Board thus the Complaint clearly specifies which of the defendants are responsible for which acts or omissions.

Plaintiff respectfully argues that the Complaint does not constitute shotgun pleadings.

## I.     Conclusion

The Motion to Dismiss should be denied for the reasons set forth in this Response in Opposition to Defendant's Motion to Dismiss; alternatively, Plaintiffs should be granted leave to amend as to any deficiencies in the Complaint.

16

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the Court's CM/ECF system to DELL GRAHAM, P.A. Natasha S. Mickens, Natasha.Mickens@dellgraham.com; David M. Delaney, David.Delaney@dellgraham.com; and Ayanna A. Hypolite, Ayanna.Hypolite@dellgraham.com BOBBY G. PALMER, JR., ESQUIRE, at bpalmer@hilyardlawfirm.com and DAMON S. STARRET, ESQUIRE at dstarrett@hilyardlawfirm.com on this 16th day of May, 2022.

ROBERT BRUCE SNOW, P. A.

*/s/ Robert Bruce Snow*
Robert Bruce Snow, Esquire
Attorney for Plaintiffs
Florida Bar No. 134742
112 North Orange Avenue
Brooksville, FL 34601
Phone: (352) 796-1441
Email:  law@rbsnowlaw.com
bsnow@rbsnowlaw.com
kseltzer@rbsnowlaw.com

17