IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

D.L., a minor, by and through his
next-of-friends, S.L. and R. L.,
mother and father of the minor,

     Plaintiffs,

v.                                 Case No.: 8:22-cv-35-JLB-AEP

HERNANDO COUNTY SHERIFF'S
OFFICE, a public entity,
18900 Cortez Boulevard
Brooksville, Florida 34601

AL NIENHUIS, in his official capacity
as Sheriff of Hernando County,
Florida;

DEPUTY PAUL SMITH, School
Resource Officer, in his individual
and official capacities,

and

HERNANDO COUNTY SCHOOL
BOARD, a public entity,

     Defendants.

_____

**FIRST AMENDED COMPLAINT FOR DAMAGES
AND JURY DEMAND
(As to HERNANDO COUNTY SCHOOL BOARD)[1]**

     COMES NOW the Plaintiff by and through his undersigned attorney and

sues the Defendants and says:

_____

[1] The Plaintiff has previously filed a First Amended Complaint as to all
Defendants other than the Hernando County School Board (Docket No. 39).
This First Amended Complaint is filed to amend Counts III and Counts IV
wherein the Hernando County School Board is the Defendant.  Counts I and II
of the First Amended Complaint as to all the other Defendants (Docket No. 39)
has not been changed.

**INTRODUCTION**

1.   This is an action for damages and for declaratory relief to remedy Defendants' violations of Plaintiff's rights under the U. S. Constitution and the Americans with Disabilities Act.

2.   Plaintiff, D.L., is a minor child[2] who was as school child with disabilities in the fifth grade at Winding Waters, a public school for grades K-8, located in Hernando County, Florida.

3.   In 2018, Plaintiff was a ten-year old boy who was unlawfully restrained and handcuffed at school with excessive force and without necessity by Defendants, acting by and through their public employees and agents assigned to Plaintiff's school.   On or about January 10, 2018, Plaintiff was forcibly restrained, forcibly handcuffed and forcibly removed from the school by school personnel and by law enforcement officers of the Hernando County Sheriff's Office.

4.   Because of the child's small size and physical frailties, the handcuffs were not designed for a child resulting in the school personnel and law enforcement officers handcuffing the child in such a fashion as to be contrary to guidance on the safe use of handcuffs.

5.   On no occasion was there an imminent danger of physical harm to the child or to anyone else that required the child to be restrained and

---

[2] Plaintiff, D.L., is a minor child.  He is referred to by his initials in accordance with Federal Rules of Civil Procedure 5.2(a)(3).  A Motion to Proceed Using Initials for the parents of D.L. has been filed with the Complaint.  Accordingly, Plaintiffs are identified by their initials throughout this Complaint.

handcuffed in a fashion that would result in the child suffering injuries from the restraints and handcuffs.

6. As a result of being subjected to unnecessary and excessive handcuffing and as a result of the Plaintiff being forcibly carried out of the school by multiple deputies and as a result of the Plaintiff being forcibly removed from the school while handcuffed, Plaintiff experienced pain, fear, and emotional trauma, and an exacerbation of his disabilities.

7. Defendants Hernando County Sheriff's Office (hereinafter HCSO) and Sheriff Al Nienhuis (hereinafter Sheriff) are charged with the responsibility of establishing policies, practices, and training for School Resource Officers and law enforcement officers assigned to a public school.  Despite the provisions of federal and state law, Defendants HCSO and Sheriff are aware that mechanical restraints have been used against elementary aged school children, including school children with disabilities, by School Resource Officers and law enforcement personnel under their supervision. Defendants HCSO and Sheriff have permitted and, upon information and belief, authorized School Resource Officers and law enforcement officers to use mechanical restraints in such a way as to constitute excessive force in restraining elementary school children with disabilities, including the unlawful use of handcuffs with excessive force and without necessity.

8. Defendant, Hernando County School Board (hereinafter HCSB) is charged with the responsibility of establishing policies, practices, and training for School Board Personnel.  Despite the provisions of federal and state law,

Defendant HSCB is aware that the seclusion of children with disabilities and the excessive restraint, including mechanical restraints, have been used against elementary-aged schoolchildren, including schoolchildren with disabilities, by School Personnel.  Defendant HCSB has permitted and, upon information and belief, authorized School Personnel to improperly place children with disabilities into seclusion, to use physical restraints and mechanical restraints in such a way as to constitute excessive force in restraining elementary schoolchildren with disabilities, including the unlawful use of excessive force and without necessity.

9.  In 2009, the U.S. Government Accountability Office (GAO) published a nationwide study documenting hundreds of alleged incidents of restraint and seclusion in schools from 1990 to 2009, including 20 incidents causing death. Virtually all of the incidents identified by the GAO involved children with disabilities.  The same year, in testimony before the House Education and Labor Committee, the GAO presented its study and reported on the risks of injury and death related to the use of restraint and seclusion on children.  The GAO explained that even if no physical injury is sustained, individuals can be severely traumatized during restraint.

10.  Following the GAO report and testimony, U.S. Secretary of Education Arne Duncan wrote a letter to all states requesting that they review and revise their policies regarding restraint and seclusion.

11.   In 2010, the Florida Legislature enacted Section 1003.573, Fla. Stat., which was designed to limit the use at school of physical restraint and seclusion of children with disabilities.

12.   Plaintiff seeks an order declaring Defendants' conduct to be unconstitutional and to be in violation of the Americans with Disabilities Act. Plaintiff seeks compensatory damages, reasonably attorneys' fees and costs.

## JURISDICTION AND VENUE

13.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 & 1334(3), (4), to hear Plaintiff's constitutional claims brought under 42 U.S.C. § 1983 and Plaintiff's disability discrimination claims brough under the ADA, 42 U.S.C. §12132 *et seq*.

14.   Pursuant to 28 U.S.C. §1391(b), and the Local Rules of the Middle District of Florida, venue is proper in this judicial district because the events giving rise to this action occurred in Hernando County, Florida.

## PARTIES – PLAINTIFF

15.   Plaintiff was ten years old and weighed approximately ninety pounds when he was physically restrained, handcuffed and forcibly removed from the school while handcuffed in January of 2018.   At all relevant time, Plaintiff D.L. was enrolled in an elementary school within the Hernando County School District.   Plaintiff has disabilities including autism.   He is a person with a disability protected by the Americans with Disabilities Act.   As a minor child, Plaintiff brings this action through his mother and father and next of friends,

R.L. And S.L. and Plaintiff resides with his mother and father in Hernando County, Florida.

## PARTIES – DEFENDANTS

16.    Defendant Hernando County Sheriff's Office (HCSO) is the law enforcement agency for Hernando County, and a public entity for purposes of Title II of the ADA.

17.   Defendant Al Nienhuis (Sheriff) is the Sheriff for Hernando County, and a "person" for purposes of 42 U.S.C. § 1983.  At all time relevant to this complaint Defendant Sheriff was acting under color of state law.  Defendant Sheriff is sued in his official capacity.

18.    Defendant Paul Smith (Smith) at all time relevant hereto was employed by the Hernando County Sheriff's Office as a School Resource Officer assigned to elementary schools with the Hernando County School District. Defendant Smith is a "person" for purposes of 42 U.S.C. § 1983, and an agent of Defendant HCSO for purposes of the ADA.  At all time relevant to this complaint Defendant Smith was acting under color of state law.  Defendant Smith is sued in his individual capacity.

19.   Defendant Hernando County School District (HCSD) is a public agency for the State of Florida, and a public entity for purposes of Title II of the ADA.

## STATEMENT OF FACTS

20.   According to the Florida Department of Education, the Hernando County School District is 15% students with disabilities under the Individuals with Disabilities Education Act (IDEA).[3]

21.   As Sheriff for Hernando County, Defendant Sheriff entered into an agreement with the Hernando County School Board (HCSB) to provide deputy sheriffs to serve as School Resource Officers (SROs) during the 2017-2018 school year.  The School Resource Officers (SROs) are law enforcement officers employed by Defendant HCSO who are based in the schools.  Defendant Sheriff has the authority to hire, dismiss, assign, or reassign the SROs.

22.   Defendants HCSO, Sheriff and HCSB failed to create and maintain proper and adequate policies, practices, procedures, or trainings regarding the use of physical force and physical restraints, handcuffs, and other types of physical force on elementary schoolchildren, including students with disabilities such as Plaintiff.

23.   Defendants HCSO, Sheriff and HCSB failed to take reasonable steps to ensure compliance with the provisions of Section 1003.573, Florida Statutes and other applicable provisions of law.

24.   Defendants HCSO, Sheriff and HCSB failed to create and maintain policies, practices, procedures, or trainings regarding the improper mechanical restraint (including handcuffing) and seclusion of minor children with disabilities.

_____

[3] https://www.fldoe.org/core/fileparse.php/7672/urlt/Hernando19.pdf

25.   HCSB failed to create and maintain adequate and proper policies, practices, procedures, or trainings regarding the seclusion of elementary school children and the use of physical force and restraints, handcuffs and other types of force on elementary schoolchildren, including students with disabilities such as Plaintiff's.

### *Facts Regarding Plaintiff*

26.   During the 2017-18 school year, Plaintiff was ten years old and enrolled in the fifth grade at the Winding Waters Elementary School in Hernando County School District.  He stood about 4'10" tall and weighed about 90 pounds.

27.   In 2009, Plaintiff was diagnosed with non-communitive autism, a mental disorder.  Because of his non-communitive autism, Plaintiff experiences difficulty staying focused, paying attention, controlling behavior, complying with directives, and maintaining being seated, and is substantially limited in one or more major life activities, including learning and neurological brain functions.

28.   During the 2017-2018 school year, personnel with Winding Waters Elementary School were aware the Plaintiff had been diagnosed with non-communitive autism and that he needed a behavior intervention plan to help him manage his disability-related behaviors.

29.   On January 10, 2018, while in a classroom and while at school, Plaintiff experienced disability-related difficulties including complying with directives from teachers and administrators; controlling his emotions; and,

controlling his physical conduct.  He was removed from his classroom, taken to the school office, and isolated by being placed in seclusion by Defendant School Resource Officer in violation of § 1003.573, Fla. Stat.   Furthermore, the isolation and seclusion that Plaintiff was subjected to was more than a "time-out" used as a behavior management technique intended to calm the Plaintiff. Furthermore, the fact that the Plaintiff was forcibly and unreasonably handcuffed to the point of causing physical injuries to the Plaintiff and for an unreasonable length of time that was also excessive, unreasonable, and unnecessary clearly shows that the isolation and seclusion of the Plaintiff was not a mere "time-out".

30.  After a period of time in seclusion, the School Resource Officer and school personnel in conjunction with each other, placed handcuffs on the Plaintiff in such a fashion to cause physical injuries to the Plaintiff; and, the seclusion continued for a period of time after the Plaintiff was handcuffed.

31.  After placing the Plaintiff in handcuffs for an unreasonable and excessive period of time, the Plaintiff was physically removed from the school while being handcuffed and was physically man-handled when being removed from the school (carried out of the school by multiple deputies while the Plaintiff was in handcuffs and unable to walk) and was transported while handcuffed in such a fashion as to cause additional physical injuries to the Plaintiff.

32.   The Plaintiff was transported by HCSO to Spring Brook (a mental health facility located in Hernando County) wherein the HCSO had the Plaintiff involuntarily committed under the Baker Act.

33.   While handcuffed, Plaintiff manifested and expressed pain, mental suffering and anguish along with emotional distress.   Furthermore, the Plaintiff's mental, emotional, and psychological conditions associated with his autism became exacerbated.

34.   The use of excessive physical restraint and mechanical restraints and handcuffs by the School Resource Officer and other agents of the HCSO were contrary to the requirements of the law.   Further, at no point during the interaction between Plaintiff and the School Resource Officer was there an imminent danger of physical harm or "direct threat" to D.L. or to anyone else that required the School Resource Officer to use handcuffs.   Nor was there a "direct threat" justification for the placement of the handcuffs, or for the prolonged period of time that the handcuffs were imposed.   The only basis for the handcuffing was the School Resource Officer's actions to obtain by force and restraint compliance as to the School Resource Officer's directives.

35.   Plaintiff experienced physical pain, physical injury and significant emotional distress during the January 10, 2018 handcuffing of the Plaintiff. Thereafter, as a result of the excessive force, handcuffing, and man-handling of the Plaintiff, he suffered and continues to suffer emotional distress.

**CAUSES OF ACTION**

**Count I:    Unreasonable Seizure and Excessive Force in Violation of the U.S. Constitution, Fourth and Fourteenth Amendments 42 U.S.C. §1983**

**Against Defendant School Resource Office (Paul Smith), in his Official and Individual Capacities**

36.    Plaintiff, D.L. incorporates by reference the above paragraphs 1-35 as though fully set forth herein.

37.    The U.S. Constitution protects Plaintiff against unreasonable seizures and excessive force.   "[T]he reasonableness of a particular seizure depends not only on when it is made, but also on *how* it is carried out." *Graham v. Connor,* 490 U.S. 386,395).   Whether a seizure is unreasonable and unconstitutional depends upon the totality of the circumstances.

38.   The seizures of Plaintiff were unreasonable in light of the totality of the circumstances, including but not limited to:

a.  The age, size, and disabilities of the child, including his limited ability to impose physical harms on others and his limited ability to form criminal intent;

b.  That the child was experiencing behavior problems associated with his disabilities while at elementary school;

c.    That the School Resource Officer and school personnel physically restrained Plaintiff and placed handcuffs on the Plaintiff in such a fashion as to cause physical injury to the minor.

d.  That the excessive physical force in restraining the Plaintiff and the handcuffing of the Plaintiff violated Florida Statutes and regulations of the Hernando County School Board and the State of Florida Board of Education.

e.   The length of time of the excessive physical restraints and handcuffing; and

f.   The traumas imposed by the excessive physical restraints and handcuffing.

39.   By engaging in the acts described herein, Defendant School Resource Officer, acting under color of law and with deliberate indifference, violated the Plaintiffs' rights under the U.S. Constitution to be free from unreasonable seizures and excessive force.

40.   The rights of D.L. to be free from unreasonable seizures and excessive force as described here was clearly established in law at the time of the incidents alleged.

41.   Defendant School Resource Officer acted maliciously, intentionally, and in reckless disregard to the rights of the Plaintiff.

42.   As a proximate result of the actions and inactions of Defendant School Resource Officer, Plaintiff suffered and continues to suffer physical pain, emotional pain, psychological injury, trauma, and suffering.   Plaintiff continues to experience fear, distrust, and anxiety regarding law enforcement officers (such as School Resource Officers), deputy Sheriffs and school personnel.

43.  Plaintiff is entitled to compensatory damages, reasonable attorneys' fees and costs.

**Count II:  Disability-Based Discrimination In Violation of Title II of the Americans with Disabilities Act 42 U.S.C. §12132, 28 C.F.R. §35.130(b)(3), (8) Against Defendant Hernando County Sheriff's Office**

44.  Plaintiff incorporates by reference the above paragraphs 1- 35 as though fully set forth herein.

45.  The regulations implementing Title II of the ADA require that public entities avoid unnecessary policies, practices, criteria or methods of administration that have the effect or tendency of excluding or discriminating against persons with disabilities.  28 C.F.R. §35.130(b)(3), (8).

46.  Students with disabilities, and particularly students with disabilities involving behavior challenges, including Plaintiff are particularly susceptible to and injured by the unnecessary use of physical restraints, including handcuffs, on the basis of disability.  The effects on these students with disabilities include substantial and disproportionate physical and emotion injuries, and disruptive exclusions from the school community.

47.  Instead of the unnecessary use of excessive physical force and physical restraints, including handcuffs, students with disabilities require reasonable modifications such as crisis intervention, de-escalation, patience, and waiting.

48.  Through its policy and practice of imposing unnecessary and excessive physical force and physical restraints, including handcuffs, on

13

schoolchildren with disabilities, including Plaintiff, Defendant HCSO has violated and continues to violate the ADA.

49.   Through its failure to adopt a policy and practice of providing reasonable modifications to schoolchildren with disabilities, including Plaintiff, such as crisis intervention, de-escalation, patience and waiting, Defendant HCSO has violated and continues to violate the ADA.

50.   Plaintiff is entitled to compensatory damages, attorneys' fees and costs.

51.   Under these provisions, law enforcement officers, including School Resource Officers like Defendant School Resource Officer, may not discriminate on the basis of disability, and must provide reasonable modifications as needed during their interactions with individuals with disabilities.

a.   Based on all of the circumstances stated herein, Defendant School Resource Officer knew or should have known that Plaintiff is a person with disabilities who requires reasonable modifications under the ADA due to his disability-related difficulties.

b.   Instead of providing reasonable modifications such as crisis intervention, escalation, patience, and waiting, Defendant School Resource Officer escalated his encounters with Plaintiff and subjected him to unnecessary physical restraint including handcuffing.  In so doing, Defendant School Resource Officer acted with deliberate indifference.

c.   Further, and with deliberate indifference, Defendant HCSO failed to implement the nondiscrimination and reasonable modification

14

requirements of the ADA through its policies, practices, procedures, and trainings, and instead authorized its School Resource Officers such as Defendant School Resource Officer to engage in disability discrimination against Plaintiff.

   d. As a proximate result of the actions and inactions of Defendant HCSO and its agents, Plaintiff suffered and continues to suffer physical pain, emotional pain, psychological injury, trauma and suffering.  Plaintiff continues to experience fear, distrust, and anxiety regarding law enforcement officers such as School Resource Officers.

   e. Plaintiff is entitled to compensatory damages, reasonable attorneys' fees and costs.

## PART II – CLAIMS AGAINST HERNANDO COUNTY SCHOOL BOARD[4]

### INTRODUCTION AS TO CLAIMS AGAINST
### HERNANDO COUNTY SCHOOL BOARD

52.  This is an action for compensatory damages to remedy Defendant's, Hernando County School Board (HCSB or SCHOOL BOARD), violations of Plaintiff's rights under the U. S. Constitution and the Americans with Disabilities Act.

53.  Plaintiff, D.L., is a minor child[5] who was a school child with disabilities in the fifth grade at Winding Waters, a public school for grades K-8, located in Hernando County, Florida.

54.  On January 10, 2018, Plaintiff was a ten-year old boy who was physically abused at his school by being forcibly restrained, forcibly handcuffed and subject to excessive physical force without necessity by Defendant (Hernando County School Board), acting by and through its public employees and agents and through HCSB policies and practices allowing unnecessary physical force and physical restraints including unreasonable forceful handcuffing of young school children with disabilities.

55.  Because of the child's small size and physical frailties, the handcuffs were not designed for a small child resulting in the school personnel (including the School Resource Officer) physically restraining and handcuffing the minor

---

[4] The Claims against the Hernando County School Board are being identified as Part II of this First Amended Complaint to clarify that Counts III and IV are against the Hernando County School Board

[5] Plaintiff, D.L., is a minor child.  He is referred to by his initials in accordance with Federal Rules of Civil Procedure 5.2(a)(3).  A Motion to Proceed Using Initials for the parents of D.L. has been filed with the Complaint.  Accordingly, Plaintiffs are identified by their initials throughout this Complaint.  Whenever the term Plaintiff or Plaintiff's is used, it is referring to the minor child acting by and through his parents and next of kin.

child in a forceful, unnecessary, unreasonable, and harmful fashion so as to physically injure and harm the minor child by the use of excessive force that constituted physical abuse.

56.  On no occasion was there an imminent danger of physical harm to the child or to anyone else that required the child to be forcibly abused, restrained and handcuffed in a fashion that would result in the child suffering injuries from the physical abuse, restraints and handcuffs.

57.  As a result of being subjected to unnecessary and injurious physical restraint and handcuffing the minor child suffered physical harm and injuries (including severe bruising) from the use of such unnecessary and excessively forceful physical restraint and handcuffing. As a result of the Plaintiff being subjected to such excessive, severe, and injurious physical restraint and handcuffing, the Plaintiff experienced pain, fear, and emotional trauma, and an exacerbation of his disabilities.

### JURISDICTION AND VENUE AS TO
### HERNANDO COUNTY SCHOOL BOARD

58.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 & 1334(3), (4), to hear Plaintiff's disability discrimination claims brought under the ADA, 42 U.S.C. §12132 *et seq.*

59.  Pursuant to 28 U.S.C. §1391(b), and the Local Rules of the Middle District of Florida, venue is proper in this judicial district because the events giving rise to this action occurred in Hernando County, Florida.

**PARTIES – PLAINTIFF**
**AS TO CLAIMS AGAINST HERNANDO COUNTY SCHOOL BOARD**

60.  Plaintiff was ten years old and weighed approximately ninety pounds when he was subjected to unnecessary and excessive physical force, physical restraint and handcuffing, and forcible removal from the school while physically restrained and handcuffed in January of 2018.  At all relevant time, Plaintiff D.L. was enrolled in an elementary school within the Hernando County School District.  Plaintiff has disabilities including Non-Communicative Autism. He is a person with a disability protected by the Americans with Disabilities Act.  As a minor child, Plaintiff brings this action through his mother and father and next of friends, R.L. and S.L.; and Plaintiff resides with his mother and father in Hernando County, Florida.

**PARTIES – DEFENDANT**
**AS TO CLAIMS AGAINST HERNANDO COUNTY SCHOOL BOARD**

61.  Defendant Hernando County School District (HCSD) is a public agency for the State of Florida, and a public entity for purposes of Title II of the ADA.

62.  In Florida, district school boards may establish school resource officer programs, through a cooperative agreement with law enforcement agencies.[6]

---

[6] See §1006.12 (1), Florida Statutes (2017).

63.   During the school calendar year 2017-18, school resource officers were required to be certified law enforcement officers; however, such school resource officers are required to "abide by district school board policies" and are required to "consult and coordinate activities through the school principal".[7]

64.   By virtue of the provisions Section 1006.12, Florida Statutes pertaining to school resource officers, such officers – being under school board policies and coordinating their activities through the school principal – constitute school personnel under Florida law.[8]

65.   For the 2017-18 school year, the Hernando County School Board (HCSB) entered into an agreement with the Hernando County Sheriff wherein the Hernando County Sheriff provided certified law enforcement officers to the SCHOOL BOARD to serve as school resource officers (SROs).

66.   Deputy Paul Smith was the assigned SRO for Winding Waters Elementary School and was the SRO who interacted with the Plaintiff on January 10, 2018.  On said date, said SRO was subject to school board policies and was required to consult and conduct his activities through the school principal.  The SRO, the principal, the teachers and staff at the school were school personnel under Florida law.

---

[7] See §1006.12 (1)(b), Florida Statutes (2017).
[8] See *K.P. v. State*, 129 So. 3d 1121, 1131 (Fla. 3d DCA 2013); *M.D. v. State*, 65 So. 3d 563, 566 (Fla. 1st DCA 2011*; C.M.M. v. State*, 983 So. 2d 704, 705 (Fla. 5th DCA 2008).

### *Facts Regarding Plaintiff*

67.   During the 2017-18 school year, Plaintiff was ten years old and enrolled in the fifth grade at the Winding Waters Elementary School in Hernando County School District.  He stood about 4'10" tall and weighed about 90 pounds.

68.   In 2009, Plaintiff was diagnosed with Non-Communitive Autism, a mental disorder.  In January of 2018, the Plaintiff had a disability diagnosis of severe autistic spectrum disorder with speech and intellectual impairment with a need for adult assistance on a 24/7 basis, with the behavior of a 2.5-year-old.[9]   Because of his Non-Communitive Autism, Plaintiff manifest behaviors reflective of the nature of his disability; and, he is substantially limited in one or more major life activities, including learning and neurological brain functions.

69.   During the 2017-18 school year, The Defendant (HCSD), including school personnel (teachers, principal and the SRO) with Winding Waters Elementary School (including his teachers, principal, and the SRO), were aware and knew that the Plaintiff suffered from Non-Communitive Autism and was disabled within the meaning of the ADA.

---

[9] Suncoast Behavioral Health Center Records of Plaintiff on January 10, 2018, the Baker Act receiving facility on the day Plaintiff was removed from school and "Baker-Acted".

70.   On January 10, 2018, while in a classroom and while at school, Plaintiff experienced disability-related difficulties in the nature of an autistic meltdown.[10]   The episode was an event bought about by the child's severe autistic disorder and as such was an episode directly manifesting his severe disability; and, the episode was not an event associated with misbehavior or misconduct for which he was subject to being disciplined.   The child, while suffering from an episode associated with his disability, was removed from his classroom and taken to the school office where school personnel, including the SRO, physically abused the disabled student by the use of excessive physical restraint, forceful handcuffing, and excessive force causing physical and emotional injury and trauma.   The use of such excessive force and harmful physical abuse was out of anger, animus or frustration on the part of school personnel (including the SRO) directed to the disabled student because the disabled child was incapable of following the directions of school personnel (including the SRO) due to his disability.   The instance of violence carried out against the Plaintiff, for the reasons set forth herein, was not for the purpose of

---

[10] A meltdown is an intense response to an overwhelming situation.  It happens when someone becomes completely overwhelmed by their current situation and temporarily loses control of their behaviour.   This loss of control can be expressed verbally (eq shouting, screaming, crying), physical (e.g., kicking, lashing out, biting) or in both ways.  A meltdown is not the same as a temper tantrum.  It is not bad or naughty behavior.  When a person is completely overwhelmed, and their condition means it is difficult to express that in another way, it is understandable that the result is a meltdown.  Meltdowns are not the only way an autistic person may express feeling overwhelmed.  They may also refuse to interact, withdrawing from situations they find challenging or avoiding them altogether.   https://www.autism.org.uk/advice-and-guidance/topics/behaviour/meltdowns/all-audiences

providing the Plaintiff with an adequate special education and was unlikely to involve the adequacy of a special education.

71.   The physical abuse to which the Plaintiff was subjected was done out of animus and frustration and was done in such a fashion so as to cause physical injuries and emotional trauma to the Plaintiff.

72.   Subsequent to the autistic meltdown, the Plaintiff was transported to Spring Brook (a mental health receiving facility located in Hernando County) wherein the Plaintiff was involuntarily committed under the Baker Act.

73.   While being physically abused, Plaintiff was physically injured; manifested and expressed pain; and, experienced mental suffering and anguish along with emotional distress.  Furthermore, the Plaintiff's mental, emotional, and psychological conditions associated with his autism became exacerbated.

74.   The use of excessive and abusive physical force and restraint, including the use of mechanical restraints and handcuffs by school personnel (including the SRO) occurred because the School Board policies and practices permitted the same.  Further, at no point during the interaction between Plaintiff and school personnel (including the SRO) was there an imminent danger of physical harm or "direct threat" to D.L. or to anyone else that required the use of excessive and abusive force and harm to the Plaintiff. There was not a "direct threat" justification for use of excessive and abusive physical restraint and placement of handcuffs on the Plaintiff.

75.   Plaintiff experienced physical pain, physical injury and significant emotional distress during the January 10, 2018 interaction between the

Plaintiff and school personnel (including the SRO).  As a result of the excessive force, handcuffing, and physical abuse of the Plaintiff, he suffered and continues to suffer emotional distress for which he is entitled to money damages as compensatory damages for his past harm arising out of the physical abuse he experienced on January 10, 2018.

> **Count III:   *Disability-Based Discrimination* in Violation of Title II of the Americans with Disabilities Act 42 U.S.C. §12132, 28 C.F.R. §35.130(b)(3), (8) Against Defendant Hernando County School Board.**

76.  Plaintiff incorporates by reference paragraphs 52 through 75 above as though fully set forth herein.  Plaintiff does not incorporate paragraphs 1 through 51 of the First Amended Complaint (Docket Number 40).

77.   Defendant School Board is a public entity subject to Title II of the ADA and is officially responsible for the operations of a public entity subject to Title II of the ADA.  42 U.S.C. §12131(1).

78.  Plaintiff is a qualified individual with disabilities within the meaning of Title II of the ADA and meets the essential eligibility requirements for the receipt of services, programs, or activities of Defendant.  *Id.* § 12131(2)

79.  The claim in this count is for the violation of the ADA which forbids discrimination on the basis of disability in the providing of public services.

80.   The claim in this count is not a claim under the Individual with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, that offers federal funds to States in exchange for a commitment to furnish a "free appropriate

public education" ("FAPE") to all children with certain physical or intellectual disabilities.  See 20 U.S.C. § 1412(a)(1)(A).

81.  The IDEA does not "restrict or limit the rights [or] remedies" provided to disabled children by the ADA; however, an action brought under the ADA is subject to the IDEA's exhaustion requirement if it "seek(s) relief that is also available under" the IDEA., such as when the gravamen of a claim seeks relief for the denial of a FAPE.[11]

82.  The Plaintiff, as a disabled student, has suffered physical abuse at the hands of school personnel (including the SRO) who were acting out of animus or frustration, which said animus or frustration were directed toward the Plaintiff and which occurred because the School Board policies and practices permitted the same.  As such the Plaintiff's claim in this Count III does not involve the adequacy of special education; and therefor Plaintiff's claim does not require exhaustion under the IDEA.

83.  The discriminatory and malicious physical abuse of Plaintiff is the gravamen of the wrongs suffered by the Plaintiff and the remedies that Plaintiff seeks (compensatory damages for his physical and emotional injuries for past harm) are beyond the scope of the denial of a FAPE.

84.  Plaintiff does not allege that he exhausted administrative remedies under IDEA; instead, Plaintiff alleges that exhaustion is not required for his claim based on the fact that he suffered malicious physical abuse inflicted

---

[11] See *N.B. by Perillo v. Sch. Bd. of Okaloosa Cnty., Fla.*, No. 3:18-cv-453-MCR-HTC, 2019 WL 4774037, at *14 (N>D. Fla. Sept 30, 2019 (quoting *Fry*, 137 S.Ct. at 756 n. 9).

upon him by school personnel, acting out of animus or frustration, all of which occurred because such was permitted by School Board policies and practices.[12] Under such circumstances, exhaustion under the IDEA is unnecessary and futile.

85. Defendant HCSB and school personnel (including the principal, the teachers, and the SRO) at Plaintiff's school knew that Plaintiff was disabled and that he suffered from a severe autism disorder.

86. The Defendant SCHOOL BOARD, acting through its personnel (including the SRO), and by virtue of having policies and practices that permitted the forceful restraint and forceful handcuffing of Plaintiff, demonstrated deliberate indifference to the Plaintiff's rights under Title II of the ADA to be free from discrimination based on his disability. The deliberate indifference is show by the facts set forth in this Count III, including the fact that the Plaintiff - being of a very young age, severely disabled, and of a small size - was not a threat to harm himself or others. Notwithstanding that fact,

---

[12] The Supreme Court has specifically noted that a claim involving physical abuse of a disabled student by school personnel, acting out of animus or frustration "is unlikely to involve the adequacy of special education and is thus unlikely to require exhaustion. *Fry* at 756 n. 9. Subsequent decisions of federal courts have held that physical abuse claims arising out of animus or frustration are not subject to the exhaustion requirements of IDEA. (See *K.G. by & through Gosch v. Sergeant Bluff-Luton Cmty. Sch. Dist.*, 144 F. Supp. 3d 904, 922-23 (N.D> Iowa 2017) (finding that IDEA exhaustion was not required when the plaintiff's claims concerned excessive and unreasonable use of force and discrimination, stemming from the physical abuse of a disabled child, as "the wrongs and the remedies [were] both beyond the scope of the denial of a FAPE."]; see also *P.G. by & through R.G. v. Rutherford Cty. Bd. of Educ.*, 313 F. Supp 3d 891, 902-06 (M.D. Tenn. 2018) (finding that ADA ... claims concerning physical abuse of a disabled student ere not subject to the IDEA's exhaustion requirements)

the Plaintiff was forcibly restrained in an extremely harsh fashion for an unreasonably long period of time and was physically abused with his body suffering cuts, abrasions, and bruises, requiring medical treatment.   The Plaintiff was treated in this fashion because of his disability and school personnel (including the SRO) acted upon him out of animus or frustration because they were not able to get him to respond to the situation in the same fashion that a non-disabled child would respond, and because School Board policies and practices permitted the same.

87.  As a result of Defendant's violations, Plaintiff has suffered a violation of his federally protected rights under Title II of the ADA, and he has suffered physical and emotional injuries and trauma for which he is entitled to recover compensatory damages, together with his costs and attorneys' fees.

### Count IV:   Disability-Based Discrimination and *Failure to Accommodate* In Violation of Title II of the Americans with Disabilities Act 42 U.S.C.  §12132, 28 C.F.R.  §35.130(b)(7) Against Defendant Hernando County School Board

88.  Plaintiff incorporates by reference paragraphs 52 through 75 above as though fully set forth herein.  Plaintiff does not incorporate by reference paragraphs 1 through 51 of the First Amended Complaint (Docket Number 40.)

89.   Title II of the ADA requires that public entities do not subject individuals with disabilities to discrimination, and that such public entity provide reasonable modifications to persons with disabilities.   42 U.S.C. §12132, 28 C.F.R. §35.130(b)(7).

90.  Under these provisions, public schools, including school personnel, may not discriminate on the basis of disability, and must provide reasonable modifications as needed during their interactions with individuals with disabilities.

91.  Based on all of the circumstances stated herein, Defendant HCSB, including school personnel employed by the HCSB, knew that Plaintiff was a person with a severe autistic disability with attendant disability-related difficulties.

92.  Instead of providing reasonable modifications such as crisis intervention, de-escalation, patience, and waiting, and by failing to have policies and practices in place that would accommodate students with disabilities and that would provide reasonable modifications to students with disabilities, including severe autistic disorders as suffered by the Plaintiff, Defendant HCSB subjected him to unnecessary seclusion, excessive physical restraints including handcuffing.  In so doing, Defendant HCSB failed to provide the Plaintiff with accommodation and modifications required by the ADA and acted with deliberate indifference as to the rights of the Plaintiff, including his rights under the ADA.

93.  Further, and with deliberate indifference, Defendant HCSB failed to implement the nondiscriminatory and reasonable modification requirements of the ADA through its policies, practices, procedures, and trainings, and instead authorized its school personnel to engage in disability discrimination against Plaintiff by not providing modifications to address Plaintiff's disability during

periods of an autistic meltdown which are endemic to children with severe autistic disability such as that suffered by Plaintiff.

94.  HCSD has failed to create and maintain adequate and proper policies, practices, procedures, or trainings regarding the seclusion of elementary school children and the use of physical force and restraints, handcuffs and other types of force on elementary schoolchildren, including students with disabilities such as Plaintiff's.

95.  Plaintiff alleges that the claim in this Count IV is not a claim under the Individual with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, that offers federal funds to States in exchange for a commitment to furnish a "free appropriate public education" ("FAPE") to all children with certain physical or intellectual disabilities.  See 20 U.S.C. § 1412(a)(1)(A).

96.  Plaintiff alleges in this Count IV that the IDEA does not "restrict or limit the rights [or] remedies" provided to disabled children by the ADA; however, an action brought under the ADA is subject to the IDEA's exhaustion requirement if it "seek(s) relief that is also available under" the IDEA., such as when the gravamen of a claim seeks relief for the denial of a FAPE.

97.  For purposes of this Count IV, Plaintiff does not allege that he exhausted the administrative remedies under the IDEA; instead, Plaintiff alleges that the exhaustion requirement of Section 1415(l) of the IDEA is unnecessary and futile.

98.  For purposes of this Count IV, Plaintiff alleges that the exhaustion requirement under the IDEA is only applicable when a non-IDEA claim seeks

relief that is also available under the IDEA.  By its express terms and its plain text, Section 1415(l) requires exhaustion only when the plaintiff's non-IDEA suit "seek[s] relief that is also available under (the IDEA]."

99.  For purposes of this Count IV, Plaintiff alleges that his claim in this count seeks a remedy under the ADA that is a remedy the IDEA can *not* provide - money damages for his past harm.  Plaintiff alleges that money damages for past harm is not a remedy available under the IDEA.[13]

100.  As a proximate result of the actions and inactions of Defendant HCSB and its agents, Plaintiff suffered and continues to suffer physical pain, emotional pain, psychological injury, trauma and suffering.  Plaintiff continues to experience fear, distrust, and anxiety regarding school personnel, including School Resource Officers.

---

[13] The Plaintiff acknowledges a number of federal district and circuit court decisions have held that Plaintiff was required to exhaust his ADA claim under the exhaustion requirement of the IDEA and that such was the basis for this Court dismissing Count IV in Plaintiff's initial complaint wherein the Court determined that Plaintiff's ADA claim for damages was subject to the exhaustion requirement of the IDEA.

However, the very issue raised in this count is currently before the United States Supreme Court in *Perez v. Sturgis Public Schools,* (Case No. 21-887) Cert. Granted 10/3/2022 to review *Perez v. Sturgis Public Schools,* 3 F. 4th 236, (6th Cir, 2021).  Oral arguments are calendared for Jan. 18, 2023 and included in the questions presented for review is "*Whether Section 1415(f) requires exhaustion of a non-IDEA claim seeking money damages that are not available under the IDEA.*"

The Plaintiff respectfully realleges Count IV to preserve the very issue currently being considered by the United States Supreme Court in *Perez v. Sturgis Public Schools.*  The Plaintiff will be filing a Motion to Stay disposition of Count IV pending the Supreme Court's decision in the *Perez* case now before the Supreme Court.

101.   Plaintiff is entitled to and seeks compensatory damages under the ADA for the past harm that he has suffered, and reasonable attorneys' fees and costs.

**Count V:  §1983 Claim for Violation of Due Process Right to be Free of Unreasonable Seizures under the Fourth and Fourteenth Amendment**

102.  Plaintiff re-alleges paragraphs 52 through 75 as though fully set forth herein.

103. The Fourth Amendment prohibits unreasonable seizures in the context of involuntary psychiatric examinations.

104.  The legality of a seizure by a school official depends on the reasonableness, under the circumstances, of the seizure.  The reasonableness of the seizure is determined using a two-step inquiry, "first, one must consider 'whether the...action was justified at its inception.'"  *New Jersey v. T.L.O.* 469 U.S. 315, 341 (1985) (internal citations omitted).

105. "[S]econd, one must determine whether the [seizure] as actually conducted 'was reasonably related in scope to the circumstances which justified interference in the first place.'" *Id.*  The measure employed during the seizure must be "reasonably related to the objectives of the [seizure and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *Id* at 342.

106.   HCSD employees, agents and contractors regularly seize children for involuntary examination who plainly do not meet the criteria

of the Baker Act.  Specifically, school staff, typically school resource officers, seize children by sending them for involuntary examination when they do not have a reasonable belief that the children have a mental illness and/or when they do not have a reasonable belief that the children are at imminent risk of causing bodily harm to themselves or others.

107.  Under these circumstances, seizure of a child for involuntary examination is unreasonable and unconstitutional.

108.  HCSD does not accurately train its staff, agent or contractors on the law concerning when and on who the Baker Act may legally be used.  It does not conduct any meaningful after-the-fact review of its employees and agents use of the Act.  And when abuses of the Act are reported, it takes no corrective action.

109.  HCSD has the power to issue policies directing implementation of the Baker Act in its public schools.

110.  The School Board is not entitled to sovereign immunity under the Eleventh Amendment, *Travelers Indem. Co. v. Sch. Bd. of Dade Cnty, Fla.* 666 F.2d 505, 509 (11th Cir. 1982).

111.  In calendar year 2017-18, the School Board provided school resource officers at Plaintiff's school through an agreement with the Hernando County Sheriff.

112.  HCSD has the power to require school resource officers and other school personnel to comply with School Board policies in regard to

the implementation and utilization of the Baker Act in HCSD public schools.

113.   On January 20, 2018, Deputy Paul Smith, was the school resource officer at Plaintiff's school.   He seized and initiated an involuntary examination of D.L. under the Baker Act.

114.   Statewide, in the 2016-17 school year, children were seized for involuntary examination under the Baker Act 32,763 times.  Of those children, at least 22 percent were taken directly from schools.  In the 2017-18 school year, Florida children were examined under the Baker Act. 37,882 times.[14]

115.   The Baker Act states the same criteria for involuntary examination of youth as it does for adults.  The criteria provides that a person may be taken to a receiving facility for involuntary examination if there is reason to believe that the person has a *mental illness* and because of his or her *mental illness.*  The criteria sets forth a number of reasons justifying an involuntary examination, including there being the substantial likelihood that without care or treatment the person will cause serious bodily harm to himself or herself or others in the near future, as evidence by recent behavior.  Fla. Stat. § 394.463(1) (2017).

116.   In practice, because children are not expected to care for themselves, school resource officer generally rely on section (b)2 of the

---

[14] Annette F. Christy, et al., Fiscal year 2018-19 Report, 12 n. 2 (Baker Act Reporting Center, November 2020), https://www.usf.edu/cbcs/baker-act/documents/ba_usf_annual_report_2018_2019.pdf.

Baker Act when initiating an involuntary examination of a child.  Under this provision, the Baker Act is appropriate and legal only when "there is reason to believe that the person has a mental illness *and because of his or her mental illness...*[t]here is a substantial likelihood that without care or treatment the person will cause serious bodily injury to himself or herself or other *in the near future*" (emphasis added).

117.  The definition of mental illness under the Baker Act explicitly excludes developmental disabilities, Fla. Stat. §394.455(28) (2017). Involuntary commitment of people with developmental disabilities, including autism, is addressed by a different statute, Fla. Stat. § 393.11 (2017), which only allows involuntary confinement after a hearing at which the person is represented by counsel.

118. "Serious bodily harm" is "[serious physical impairment of the human body; esp., bodily injury that creates a substantial risk of death or that causes serious, permanent disfigurement or protracted loss or impairment of the function of any body part or organ." *Black's Law Dictionary* (11th ed. 2019).

119.  The Baker Act also includes a section enumerating the rights of persons seized under the authority of the Baker Act, referred to as "patients."  Fla. Stat. § 394.459 (2017).  "The right to individual dignity" is the very first right set forth.  Fla. Stat. § 394.459(1) (2017).  This provision prohibits the use of "restraining devices utilized for criminals or

those accused of a crime," such as handcuffs, except when necessary to protect the person subject to involuntary examination or others.  *Id.*

120.  Unnecessary involuntary psychiatric hospitalization is deeply harmful to children.

121.  Children who have been handcuffed or placed in hobble restraints – forms of mechanical restraints – put in the back of a police car, and taken to a psychiatric hospital are understandably and virtually inevitably traumatized by the experience.[15] The use of restraints including mechanical restraints, has been found to subject children, espec0ally children with disabilities, to a high risk of harm.[16]

122.  On January 19, 2018, D.L. was unlawfully seized for involuntary examination under the Baker Act.  Under the circumstances described herein, the seizure of D.L. for involuntary examination and confinement was unreasonable, without cause, and unconstitutional. D.L.'s rights under the Fourth Amendment were violated by the Defendant HCSB in having the Plaintiff unlawfully seized.

123.  At the time he was seized, placed in handcuffs, and sent to a Baker Act receiving facility for involuntary examination, he did not meet

---

[15] See Statement of Interest of the United States, *S.F. et al. v. Kenton County et al.*, no. 15-cv-00143-WOB-JGW (2015, EDF no. 32 (Collecting case for the proposition that "[h]andcuffing a young child, particularly a child with a disability, constitutes an extraordinary intrusion" and "[s]uch interactions are fraught with the potential for lasting trauma and damage.") (observing that children with mental health and other disorders are at especially high risk for death or serious injury from the use of restraints).
[16] See General Accounting Office, Improper Restraint or Seclusion Use Places People at Risk, (Sept. 1999), https://www.gao.gov/products/hehs-99-176; U.S. Department of Educ.

the criteria for involuntary examination.  There was no reason to believe that the Plaintiff was mentally ill and his autism did not constitute a mental illness, by definition.

124.  There was no reason to believe that the small ten-year-old boy of small size was a threat to cause "series bodily harm" to himself or others.

125.  When the Plaintiff was handcuffed and taken for involuntary examination and confinement under the Baker Act such was done contrary to and in violation of the provisions of the Baker Act and contrary to the provisions of § 193.11, Fla. Stat. (2017) and such the Defendant HCSD violated Plaintiffs rights under said provisions of Florida Statute.

126.  As a result of Defendant HCSB's unreasonable and unlawful seizure, the Plaintiff has suffered and will continue to suffer emotional distress, pain and humiliation.  He will continue to experience anguish, fear, distrust, and anxiety.

## JURY DEMAND

127.  Plaintiff hereby demands a trial by jury of all issues triable by a jury, including all issues raised by Counts I, II, III, IV, and V of this First Amended Complaint.

**PRAYER FOR RELIEF**
**AS TO DEFENDANT HERNANDO COUNTY SCHOOL BOARD**

WHEREFORE Plaintiff, a minor child, by and through his parents and next-of-kin prays for the following relief:

A.   A judgment finding that the Defendant HCSB violated the rights of Plaintiff under the Americans with Disabilities Act as to Count III;

B.   A judgment finding that the Defendant HCSB violated the rights of Plaintiff under the Americans with Disabilities Act as to Count IV;

C.   A judgment finding that the Defendant HCSB violated the Plaintiff's Fourth Amendment rights by having unlawfully and unconstitutionally seized the Plaintiff;

D.  Award Plaintiff compensatory money damages under Count III;

E.  Award Plaintiff compensatory money damages under Count IV.

F.  Award Plaintiff compensatory damages under Count V.

E.   Award reasonable attorneys' fees and costs pursuant to 42 U.S.C. §§1988 and §12205 and other applicable provisions of law.

Certificate of Service

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the Court's CM/ECF system to DELL GRAHAM, P.A. Natasha S.

Mickens,        Natasha.Mickens@dellgraham.com;        David     M.        Delaney,
David.Delaney@dellgraham.com;        and        Ayanna      A.        Hypolite,
Ayanna.Hypolite@dellgraham.com   BOBBY   G.   PALMER,   JR.,   ESQUIRE,   at
bpalmer@hilyardlawfirm.com     and   DAMON    S.   STARRET,   ESQUIRE   at
dstarrett@hilyardlawfirm.com on this 5th day of December, 2022.

ROBERT BRUCE SNOW, P.A.

/S/ *Robert Bruce Snow*

_____
Robert Bruce Snow, Esquire
Attorney for Plaintiffs
Florida Bar No.:  134742
112 North Orange Avenue
Brooksville, FL  34601
(352) 796-1441
law@rbsnowlaw.com

HCSD failed to create and maintain adequate and proper policies, practices, procedures, or trainings regarding the seclusion of elementary school children and the use of physical force and restraints, handcuffs and other types of force on elementary schoolchildren, including students with disabilities such as Plaintiff's.