UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

D.L., a minor, by and through his next-of-friends, S.L. and R.L., mother and father of the minor,

        Plaintiffs,

v.

        Case No.: 8:22-cv-35-JLB-AEP

HERNANDO COUNTY SHERIFF'S OFFICE, a public entity, AL NIENHUIS, in his official capacity as Sheriff of Hernando County, Florida, DEPUTY PAUL SMITH School Resource Officer, in his individual and official capacities, and HERNANDO COUNTY SCHOOL BOARD, a public entity,

        Defendants.
_____/

# ORDER

Plaintiff D.L., a minor, sues numerous defendants, including the Hernando County Sheriff's Office ("HCSO") and the Hernando County School Board ("HCSB") for Fourth and Fourteenth Amendment violations as well as violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132. (*See* Docs. 1, 53, 62). The Second Amended Complaint (Doc. 62) is the operative complaint in this matter. Defendant HCSO, as well as Sheriff Al Nienhuis ("Sheriff Nienhuis"), and Deputy Paul Smith ("Deputy Smith," and together with HCSO and Sheriff Nienhuis, the "HCSO Defendants") have filed a motion to dismiss the Second

1

Amended Complaint. (Doc. 71). D.L. filed a response. (Doc. 75).[1] Upon careful review, the Motion to Dismiss (Doc. 71) is **GRANTED in part** and **DENIED in part**.

## BACKGROUND[2]

D.L. is a child who has been diagnosed with non-communicative autism. (Doc. 62 at ¶ 26). He "experiences difficulty staying focused, paying attention, controlling behavior, complying with directives, and maintaining being seated, and is substantially limited in one or more major life activities, including learning and neurological brain functions." (*Id.* at ¶ 27). During the 2017-2018 school year, D.L. was ten years old and enrolled in the fifth grade at the Winding Waters Elementary School ("Winding Waters"), a school in the Hernando County School District. (*Id.* at ¶ 26). School personnel were aware of D.L.'s autism diagnosis and understood that D.L. needed a "behavior intervention plan" in order to "manage his disability-related behavior." (*Id.* at ¶ 28).

---

[1] On May 12, 2023, Plaintiff filed Plaintiff's (Time Sensitive) Unopposed Motion for Extension of Time to Respond to the Motion to Dismiss (Doc. 74), but the request was incorrectly uploaded as a response in opposition to the Motion to Dismiss and the Court thus was not aware of the request. D.L.'s response to the Motion to Dismiss was then filed ten days later. (Doc. 75). Because the request for extension of time was unopposed and Defendants have not objected to the late filing, the Court will consider the response. *See Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1332 (11th Cir. 2014) (noting a "strong preference for deciding cases on the merits—not based on a single missed deadline—whenever reasonably possible").

[2] A court must accept a plaintiff's factual allegations as true at the motion to dismiss stage. *West v. Warden*, 869 F.3d 1289, 1296 (11th Cir. 2017) ("When considering a motion to dismiss, we accept as true the facts as set forth in the complaint and draw all reasonable inferences in the plaintiff's favor") (internal quotation marks and citations omitted). Accordingly, this background section relies on the facts recited in the Second Amended Complaint. (Doc. 62).

On January 10, 2018, while D.L. was in a classroom at Winding Waters, he "experienced disability-related difficulties including complying with directives from teachers and administrators; controlling his emotions; and, controlling his physical conduct." (*Id.* at ¶ 29). At the time, D.L. stood about 4'10" tall and weighed about 90 pounds. (*Id.* at ¶ 26). D.L. was removed from his classroom and taken to the school office. (*Id.* at ¶ 29). Deputy Smith isolated D.L. by "plac[ing] [him] in seclusion." (*Id.*) Deputy Smith and other school personnel placed handcuffs on D.L. "in such a fashion to cause physical injuries" to D.L. and the seclusion continued. (*Id.* at ¶ 30). Still in handcuffs, D.L. was then removed from the school and transported by HCSO to Spring Brook, a mental health facility located in Hernando County. (*Id.* at ¶¶ 31–32). While there, the HCSO had D.L. involuntarily committed under the Baker Act. (*Id.* at ¶ 32). D.L. continues to suffer "emotional pain, psychological injury, trauma, and suffering" in the aftermath of these events. (*Id.* at ¶ 42).

## DISCUSSION

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," and "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

3

face.'" Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) (citation omitted).

## I. Whether the claims against Deputy Smith in his official capacity should be dismissed.

The HCSO Defendants argue that the Second Amended Complaint is subject to dismissal because it "fails to clearly indicate whether the claims are raised against . . . Deputy Paul Smith, in his individual or official capacities." (Doc. 71 at 5).

The Court has already dismissed the claims against Deputy Smith in his official capacity. (Doc. 37 at 10) ("D.L. responds that he agrees with the Defendants that Deputy Smith should not be sued in his official capacity. . . . Accordingly, the Claims against Deputy Smith in his official capacity are due to be dismissed . . . ."). Here, again, D.L. clarifies that he meant to sue Deputy Smith in his individual capacity. (Doc. 75 at 3–6). But the Court understands Defendants' confusion because, as Defendants point out, the case style of the Second Amended Complaint lists Deputy Smith in both his individual and official capacities (Doc. 62 at 1) and the title of Count I of the Second Amended Complaint states that it is against "Defendant School Resource Officer (Paul Smith) in his Official and Individual Capacities" (*Id.* at 11). The section describing the parties indicates, however, that "Defendant Smith is sued in his individual capacity." (*Id.* at 7).

4

While the Second Amended Complaint contains inconsistencies, Plaintiff's intention to only sue Deputy Smith in his individual capacity is well-documented throughout the record before the Court. (*See* Doc. 19 at 6; Doc. 75 at 3–6). Accordingly, the Court will not dismiss any claims on this ground alone. *See* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1286 (4th ed. 2023) ("[T]he district court is obligated to make a determined effort to understand what the pleader is attempting to set forth and to construe the pleading in his or her favor, whenever the interest of justice so requires."). To be clear, however, any claims against Deputy Smith in his official capacity remain dismissed.

## II. Whether Sheriff Nienhuis should be dismissed from this action.

In a similar vein, the HCSO Defendants request dismissal of Sheriff Nienhuis from the Second Amended Complaint even though there are no claims actually set forth against Sheriff Nienhuis. (Doc. 71 at 7–12).

The Court previously dismissed Sheriff Nienhuis as a defendant but granted D.L. leave to amend. (Doc. 37 at 20–25). The HCSO Defendants point out that the case style of the Second Amended Complaint lists Sheriff Nienhuis (Doc. 62 at 1) and he is still listed as a party (*Id.* at 6–7). They admit, however, that Sheriff Nienhuis is "not identified in any of the counts in the . . . Second Amended Complaint . . . ." (Doc. 71 at 7–8).

D.L.'s response confirms that there is "no claim against Sheriff Nienhuis in the Second Amended Complaint" and "he is not now a party to this action." (Doc. 75 at 6–7). Because there is no claim pending against Sheriff Nienhuis, there is

nothing for this Court to consider with respect to dismissal.  To be clear, however, any claims against Sheriff Nienhuis remain dismissed.

### III. Whether any claims against HCSO for violation of Florida Statute § 1003.573 should be dismissed.

Next, the HCSO Defendants argue that any claims against HCSO and Sheriff Nienhuis under Florida Statute section 1003.573 are subject to dismissal with prejudice.  (Doc. 71 at 12).  The Court has already found that Sheriff Nienhuis and HCSO are not "school personnel" as dictated by the text of the statute.  (Doc. 37 at 34).

As previously discussed, there are no claims in the Second Amended Complaint against Sheriff Nienhuis.  With respect to HCSO, Plaintiff argues that "his allegations as to a violation of [section] 1003.573 against the HCSO should be allowed to remain [in] the Second Amended Complaint – not as a separate claim against the HCSO – but as a component of Plaintiff's ADA claim against the HCSO."  (Doc. 75 at 9).

It appears that there is nothing for this Court to dismiss because there are no counts brought under section 1003.573.  Nevertheless, the Court is troubled by Plaintiff's assertion that his ADA claim is predicated on a violation of section 1003.573, which seems to only apply to school personnel because this Court has already ruled that HCSO is not "school personnel" as contemplated by Florida Statute § 1003.573.

Accordingly, while the Court does not dismiss any of the claims because the Complaint does not bring any claims under Florida Statute § 1003.573, the Court

6

cautions Plaintiff that any future argument as to a claim against HCSO that relies on a violation of Florida Statute § 1003.573 may result in a dismissal of that claim.

## IV. Whether Count II adequately pleads a claim for compensatory damages.

Finally, the HCSO Defendants argue that D.L. improperly seeks to recover compensatory damages from HCSO in Count II of the Second Amended Complaint. (Doc. 71 at 13–14).

Count II alleges a violation of Title II of the ADA against HCSO. (Doc. 62 at ¶¶ 44–51). "To prevail on a claim for compensatory damages under . . . the ADA, a plaintiff must show that a defendant violated his rights under the statute[] and did so with discriminatory intent." *McCullum v. Orlando Reg'l Healthcare Sys, Inc.*, 768 F.3d 1135, 1146–47 (11th Cir. 2014) (citation omitted). The Second Amended Complaint alleges that "with deliberate indifference, Defendant HCSO failed to implement the nondiscrimination and reasonable modification requirements of the ADA . . . ." (Doc. 62 at ¶ 51c). Defendants argue that "deliberate indifference" is insufficient to meet the standard.

The Eleventh Circuit has previously stated that "[t]o get damages . . . a plaintiff must . . . prove that the entity that he has sued engaged in intentional discrimination, which requires a showing of 'deliberate indifference.'" *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019) (quoting *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 348 (11th Cir. 2012)). "Deliberate indifference" is an "exacting standard." *Id.* Deliberate indifference is shown where "the defendant knew that harm to a federally protected right was substantially likely

7

and . . . failed to act on that likelihood." *Id*. Moreover, "in order to hold a government entity liable, the plaintiff must demonstrate that an 'official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [entity's] behalf' had 'actual knowledge of discrimination in the [entity's] programs and fail[ed] adequately to respond.'" *Id.* at 1134 (quoting *Liese*, 701 F.3d at 348). To qualify, the "official" must be "high enough up the chain-of-command that his [or her] acts constitute an official decision by the [entity] not to remedy the misconduct." *Id.* (citing *J.S., III by & through J.S. Jr. v. Hous. Cty. Bd. of Educ.*, 877 F.3d 979, 987 (11th Cir. 2017) (alterations in original)). In other words, "the official [must] have the knowledge of and authority to correct an entity's discriminatory practices," and not just be a "line employee[]." *Id.* at 1135 (citing *Liese*, 710 F.3d at 349).

The Second Amended Complaint makes the following allegations that, taken as true, appear to address the issue of deliberate indifference:

- "Despite the provisions of federal and state law, Defendants HCSO and Sheriff [Nienhaus] are aware that mechanical restraints have been used against elementary aged school children, including school children with disabilities, by School Resource Officers and law enforcement personnel under their supervision. Defendants HCSO and Sheriff have permitted and, upon information and belief, authorized School Resource Officers and law enforcement officers to use mechanical restraints in such a way as to constitute excessive force in restraining elementary school children with disabilities, including the unlawful use of handcuffs with excessive force and without necessity." (Doc. 62 at ¶ 7).

- "Defendants HCSO, Sheriff and HCSB failed to create and maintain proper and adequate policies, practices, procedures, or trainings regarding the use of physical force and physical restraints, handcuffs, and other types of physical force on elementary schoolchildren, including students with disabilities such as Plaintiff." (*Id.* at ¶ 22).

8

- "[W]ith deliberate indifference, HSCO failed to implement the nondiscrimination and reasonable modification requirements of the ADA through its policies, practices, procedures, and trainings, and instead authorized its School Resource Officers such as Defendant School Resource Officer to engage in disability discrimination against Plaintiff." (*Id.* at ¶ 51c).

Accepted as true for purposes of the Motion to Dismiss, these allegations adequately assert that Sheriff Nienhuis, who the Second Amended Complaint claims is "charged with the responsibility of establishing policies, practices, and training for School Resource Officers and law enforcement officers assigned to a public school," (*id.* at ¶ 7), had knowledge of discrimination by School Resource Officers (*id.*) and failed to adequately address the discrimination (*id.* at ¶¶ 7, 22–24). Thus, the Second Amended Complaint, on its face, sufficiently establishes a right to seek compensatory damages.

## CONCLUSION

For the reasons set forth above, the Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

**ORDERED** at Tampa, Florida on November 16, 2023.

_____
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE